## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAMES N. TAYLOR,            )
                                )
            **Petitioner,**        )
                                )
      **vs.**                   )    **Case No. 4:13 CV 960 RWS**
                                )
**JAY CASSADY and CHRIS KOSTER,**[1]   )
                                )
           **Respondents.**     )

## MEMORANDUM AND ORDER

Petitioner James N. Taylor seeks federal habeas relief from a state court judgment entered after a jury trial.  See 28 U.S.C. § 2254.  For the reasons set forth below, the Petition and Petitioner's request for an evidentiary hearing will be denied.

### I.  Background

The State of Missouri charged Petitioner, as a prior and persistent offender, with committing on May 24, 2007, six felonies:  forcible rape in violation of Mo. Rev. Stat. Section 566.030 (Count I); armed criminal action in violation of Mo. Rev. Stat. Section 571.015 (Count II); forcible sodomy in violation of Mo. Rev. Stat. Section 566.060 (Counts III and IV); kidnapping in violation of Mo. Rev. Stat. Section 565.110 (Count V); and, first-degree assault in

---

[1] Petitioner notified the Court that he was transferred to the Jefferson City Correctional Center ("JCCC"). Jay Cassady is the Warden of the JCCC.  Because Jay Cassady is the state officer having custody of Petitioner, the Court substitutes Jay Cassady for the Respondent originally named in this habeas proceeding.  See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rule").

Additionally, the Court adds Chris Koster, the Attorney General of the State of Missouri, as a Respondent because Petitioner is subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding.  See Habeas Rule 2(b).

violation of Mo. Rev. Stat. Section 565.050 (Count VI).[2]  These charges stemmed from an incident occurring in the City of St. Louis, in which Petitioner assaulted V.W.[3]

At trial in April 2009, the State introduced as exhibits, among other items, a knife and a box cutter seized at the crime scene;[4] pictures of the crime scene;[5] pictures of V.W. and of Petitioner taken after the assault;[6] Petitioner's written consents to swab him for DNA material, as well as the results of those swabs;[7] and the results of V.W.'s examination at the hospital.[8]  The State also presented the testimony of eight witnesses:  V.W.; three investigating police officers; two employees of the police department's crime lab who prepared the DNA material for examination and analyzed that material; and two nurses, one who had swabbed Petitioner for DNA and one who had examined and cared for V.W.[9]  In addition to his testimony,[10] Petitioner introduced, among other exhibits, the parties' stipulation that, prior to the incident, V.W. had been diagnosed with and treated for schizophrenia.[11]

---

[2]  Indictm., filed July 24, 2007, Resp'ts Ex. P, Legal File at 17-19 [ECF No. 21-1 at 20-22].

[3]  See Indictm., filed July 24, 2007, Resp'ts Ex. P, Legal File at 17-19 [ECF No. 21-1 at 20-22].

[4]  Exhibits 55 and 57, Trial Tr., Resp'ts Ex. Q, at 296, 297, 349-52 [ECF No. 21-2 at 77, 78, 91].

[5]  Exhibits 1 through 27, Trial Tr., Resp'ts Ex. Q, at 291-92, 294, 346-52 [ECF No. 21-2 at 76, 77, 90-91].

[6]  Exhibits 28 through 50 and 51 through 54, Trial Tr., Resp'ts Ex. Q, at 363-64, 369-70, respectively  [ECF No. 21-2 at 94, 96, respectively.]

[7]  Exhibits 58, 58A through 58E, 60, 61, and 67, Trial Tr., Resp'ts Ex. Q, at 366-69, 373-77 [ECF No. 21-2 at 97-98].

[8]  See, e.g., Exhibits 56, 56A, 56B, 65, and 66 sexual assault evidence collection kit and its contents, Trial Tr., Resp'ts Ex. Q, at 364-65 and 384 [ECF No. 21-2 at 94-95 and 99] and Exhibit 68, a diagnostic imaging of V.W.'s right ribs, Trial Tr., Resp'ts Ex. Q, at 408-09 [ECF No. 21-2 at 105-06].

[9]  Trial Tr., Resp'ts Ex. Q, at 257-436 [ECF No. 21-2 at 68-112].

[10]  Trial Tr., Resp'ts Ex. Q, at 439-73 [ECF No. 21-2 at 113-22].

[11]  Ex. E, Trial Tr., Resp'ts Ex. Q, at 406-08, 437-38 [ECF No. 21-2 at 105-06, 113].

V.W. testified that she knew Petitioner from the neighborhood and asked him to help her move some large items out of her apartment. She let him in the apartment building through a back entrance because he was "banned" from her building.[12] She described the subsequent night-time assault in her apartment as including Petitioner making her lick his chest, the use of "Vaseline," Petitioner placing his penis in V.W.'s vagina, and other conduct of a sexual nature; Petitioner repeatedly beating V.W.'s head with his hands; Petitioner refusing to allow V.W. to use the bathroom, and V.W. urinating and defecating on the floor; and Petitioner strangling V.W. until she became unconscious.[13] V.W. first reported the assault and rape to Officer Ernest Greenlee of the St. Louis Metropolitan Police Department ("Department"), who was in the lobby of her apartment building when she arrived after she awakened and crawled from her apartment while Petitioner slept there.[14] Officer Greenlee called an ambulance and described V.W. as having "blood on her face, coming from her nose and mouth" and as appearing "like she was pretty upset and afraid."[15]

Michael Herzberg, a detective with the Department, observed at V.W.'s apartment a knife, "an overturned bottle of petroleum jelly[, . . . a]nd a large brown stain on the carpet next to some white towels."[16] After visiting the crime scene, Detective Herzberg talked with V.W. at

---

[12] Trial Tr., Resp'ts Ex. Q, at 258-66 [ECF No. 21-2 at 68-70].

[13] Trial Tr., Resp'ts Ex. Q, at 268-284, 295-97 [ECF No. 21-2 at 70-75, 77-78]; see also id. at 298-330 [ECF No. 21-2 at 78-86].

[14] Trial Tr., Resp'ts Ex. Q, at 284-87, 331-343 [ECF No. 21-2 at 74-75, 86-89].

[15] Trial Tr., Resp'ts Ex. Q, at 331-32, 334 [ECF No. 21-2 at 86-87].

[16] Trial Tr., Resp'ts Ex. Q, at 357 [ECF No. 21-2 at 93].

the hospital.[17]  Detective Herzberg showed V.W. a photo array, and V.W. identified Petitioner as the person who had assaulted her.[18]

Kathryn Howard, an emergency room nurse, completed a physical examination and a sexual assault examination of V.W.[19]  In relevant part, Ms. Howard testified that V.W. had "physical injuries" and "genital trauma."[20]  More specifically, Ms. Howard's examination of V.W. revealed that V.W. had:

> bleeding inside her vagina, as well as some abrasions inside her vagina, as well as on her cervix . . .

> [and m]ultiple abrasions, lots of bruises.  [V.W.] had scleral hemorrhaging in her eyes, which basically means that she had a lot of popped blood vessels in her eyes.  She had bruising all over her body.[21]

(Footnote added.)

During Detective Herzberg's later interview of Petitioner at the police station, Petitioner consented to the swabbing of his body for DNA material, and his cheeks, hands, and chest were swabbed.[22]  Two employees of the Department's Crime Lab, Jenna Oakes-Smith, a forensic biologist, and Sarah Custis, a DNA analyst, testified about the preparation and testing of material for DNA analysis.[23]  Ms. Custis stated she found, to a reasonable degree of scientific certainty, a

---

[17]  Trial Tr., Resp't's Ex. Q, at 358 [ECF No. 21-2 at 93].

[18]  Trial Tr., Resp't's Ex. Q, at 361-63 [ECF No. 21-2 at 94].

[19]  Trial Tr., Resp't's Ex. Q, at 378-99 [ECF No. 21-2 at 98-103].

[20]  Trial Tr., Resp't's Ex. Q, at 382 [ECF No. 21-2 at 99].

[21]  Trial Tr., Resp't's Ex. Q, at 382-83 [ECF No. 21-2 at 99].

[22]  Testimony of Detective Herzberg and Susan Ries, a nurse, Trial Tr., Resp't's Ex. Q, at 365-69 and 372-78 [ECF No. 21-2 at 95-98].

[23]  Trial Tr., Resp't's Ex. Q at 409-35 [ECF No. 21-2 at 106-12].

mixture of Petitioner's and V.W.'s DNA on a swab from Petitioner's right breast.[24] Additionally, she found no DNA of Petitioner on the box-cutter found in V.W.'s apartment, and found insufficient information to make a conclusive determination about DNA, other than V.W.'s DNA, on the handle of the knife found in V.W.'s apartment.[25]

The trial court denied Petitioner's motions for acquittal at the close of the State's evidence and at the close of all the evidence,[26] and, outside the presence of the jury, concluded that Petitioner was a prior and persistent offender.[27] The jury found Petitioner guilty of forcible rape (Count I), kidnapping (Count V), and first-degree assault (Count VI); and not guilty of the other three charged offenses, armed criminal action (Count II) and forcible sodomy (Counts III and IV).[28] After trial, the trial court denied Petitioner's supplemented motion for acquittal or, in the alternative, for a new trial.[29] The trial court sentenced Petitioner, as a prior and persistent offender, to a twenty-year term of imprisonment for forcible rape, to run consecutively to two concurrent ten-year terms of imprisonment for kidnapping and first-degree assault.[30]

In his timely direct appeal, Petitioner challenged his conviction on the grounds the trial court violated his right to due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by: (1) overruling his motion for judgment of acquittal on the

---

[24] Trial Tr., Resp'ts Ex. Q, at 429-31 [ECF No. 21-2 at 111] .

[25] Trial Tr., Resp'ts Ex. Q, at 431-35 [ECF No. 21-2 at 111-12].

[26] Trial Tr., Resp'ts Ex. Q, at 436-37, 486 [ECF No. 21-2 at 112-13, 125].

[27] Trial Tr., Resp'ts Ex. Q, at 400-02, 405 [ECF No. 21-2 at 103-05].

[28] Verdicts, Legal File, Resp'ts Ex. P, at 60-65 [ECF No. 21-1 at 63-68].

[29] Pet'r Mot., as supplemented, Legal File, Resp'ts Ex. P, at 66-70 (original motion), 71-72 (first supplemental motion), and 73-74 (second supplemental motion) [ECF No. 21-1 at 69-73, 74-75, 76-77].

[30] Trial Court J., Legal File, Resp'ts Ex. P, at 75-78 [ECF No. 21-1 at 78-81].

kidnapping charge on sufficiency grounds; and (2) overruling his objections to the State's leading questions during V.W.'s direct examination with respect to the allegations of forcible rape.[31] Petitioner also contended that the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments by overruling his objections to State *voir dire* questions that sought to assess whether members of the jury panel were able to consider Petitioner's guilt based on testimony alone, despite the State's intention to introduce physical evidence.[32]

The Missouri Court of Appeals affirmed the judgment, and described the circumstances of the incident as follows:

> On May 24, 2007, V.W. was in the process of moving out of her eighth floor apartment because police had ordered her building to close. She stopped packing in order to buy liquor at a convenience store, and encountered [Petitioner] on her way home. The two knew each other in passing from the neighborhood, and V.W. asked [Petitioner] to return to her apartment and help her move a desk. [Petitioner] had been banned from V.W.'s building, so V.W. snuck him in the back door to avoid the 24-hour police surveillance.

> Once in her apartment, V.W. began drinking the brandy she had purchased at the store. [Petitioner] told her to take her clothes off. V.W. testified that [Petitioner] proceeded to punch her in the head repeatedly and strangle her, causing her to suffer broken ribs and teeth and extensive hemorrhaging. According to V.W.'s testimony, [Petitioner] raped her and tried to have oral and anal sex with her, but was unable to climax. When V.W. lost control of her bowels as a result of the beatings, she testified that [Petitioner] would not let her use the bathroom. V.W. also testified that [Petitioner] made her lick his chest, and threatened her with a knife. She eventually passed out and awoke later to find [Petitioner] sleeping on the couch.

> V.W. crawled to the door and made her way to the lobby via the fourth floor elevator. She made contact with Officer Ernest Greenlee in the lobby at approximately 6:30 a.m. Officer Greenlee observed blood on V.W.'s face and requested an ambulance. When more officers arrived on the scene, they went to V.W.'s apartment and found [Petitioner] sleeping naked on the floor. The officers seized a hunting knife and box cutter from V.W.'s apartment, and took multiple swabs from [Petitioner].

---

[31] Pet'r Br., Resp'ts Ex. A, at 13-14, 16, 22 [ECF No. 14].

[32] Pet'r Br., Resp'ts Ex. A, at 15, 26 [ECF No. 14].

> V.W. went to the hospital where emergency room nurse Kathryn Howard ("Howard") performed a sexual assault exam. During the exam, Howard noticed bleeding and abrasions on the inside of V.W.'s vagina in addition to other genital trauma. Howard observed bleeding in V.W.'s eyes that was consistent with strangulation.

State v. Taylor, No. ED93334, Opinion at 1-2 (Mo. Ct. App. filed May 4, 2010).[33] After Petitioner's unsuccessful efforts to transfer the case to the Missouri Supreme Court, the Missouri Court of Appeals issued its mandate on September 8, 2010.[34]

Following his direct appeal, Petitioner timely filed a *pro se* motion for post-conviction relief ("PCR motion") presenting seventeen ineffective-assistance-of-trial-counsel claims and a claim that the State withheld certain evidence. Pet'r PCR Mot., filed Nov. 22, 2010.[35] Through appointed counsel, Petitioner filed an amended PCR motion, including a request for an evidentiary hearing. Pet'r Am. PCR Mot., filed Mar. 1, 2011.[36] Petitioner expressly incorporated into his amended PCR motion all claims presented in his *pro se* PCR motion,[37] and set forth three additional claims that his trial attorney provided ineffective assistance of counsel in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. Id. at 3-8.[38]

---

[33] Resp'ts Ex. B.

[34] Pet'r Mot. Reh'g/Transfer, Resp'ts Ex. C [ECF No. 14]; Pet'r Appl. Transfer, Resp'ts Ex. D [ECF No. 14]; Denial of Pet'r Appl. Transfer, Resp'ts Ex. F [ECF No. 14]; Missouri Ct. Appeals' Mandate, filed Sept. 8, 2010, Resp'ts Ex. E [ECF No. 14].

[35] Resp'ts Ex. G [ECF No. 14]. Petitioner's *pro se* PCR motion is also available in the PCR Legal File, Resp'ts Ex. N, at 3-50 [ECF No. 20-2 at 5-52].

[36] Resp'ts Ex. H [ECF No. 14]. Petitioner's Amended PCR Motion is also available in the PCR Legal File, Resp'ts Ex. N, at 60-144 [ECF No. 20-2 at 62-146].

[37] Pet'r Am. PCR Mot., filed Mar. 1, 2011, PCR Legal File, Resp'ts Ex. N, at 62, 66-67 (ECF No. 20-2 at 64, 68-69].

[38] Pet'r Am. PCR Mot., filed Mar. 1, 2011, PCR Legal File, Resp'ts Ex. N, at 63-66 [ECF No. 20-2 at 65-68].

For the first additional claim in his amended PCR motion, Petitioner contended his trial attorney violated Petitioner's rights to a fair and impartial jury, to the effective assistance of counsel, to a fair trial, and to due process by failing to ask the trial court to question the jurors individually to ascertain whether any of them slept during V.W.'s testimony. Id. at 4-5.[39] Next, Petitioner argued his trial attorney violated Petitioner's rights to due process, to the effective assistance of counsel, to present a defense, and to a fair trial by failing to object, to ask for an instruction that the jury disregard, and to seek a mistrial on the grounds that the prosecutor engaged in improper personalization during closing argument and argued facts not in evidence. Id. at 5-6.[40] Finally, Petitioner claimed that his trial attorney's failure to object to V.W.'s testimony that Petitioner was banned from V.W.'s building and to request a mistrial violated Petitioner's rights to due process, effective assistance of counsel, a defense, and a trial only on the charged offenses. Id. at 7.[41] After addressing the merits of each claim in Petitioner's *pro se* and amended PCR motion, the motion court denied Petitioner post-conviction relief without an

---

[39] Pet'r Am. PCR Mot., filed Mar. 1, 2011, PCR Legal File, Resp'ts Ex. N at 63-64 [ECF No. 20-2 at 65-66].

With respect to his ineffective assistance of counsel claim based on an allegedly sleeping juror, Petitioner also filed a motion requesting leave to contact jurors ("juror contact motion"). Pet'r Juror Contact Mot., filed March 1, 2011, PCR Legal File, Resp'ts Ex. N, at 55-59 [ECF No. 20-2 at 57-61].)

[40] Pet'r Am. PCR Mot., filed Mar. 1, 2011, PCR Legal File, Resp'ts Ex. N, at 64-65 [ECF No. 20-2 at 66-67].

[41] Pet'r Am. PCR Mot., filed Mar. 1, 2011, PCR Legal File, Resp'ts Ex. N, at 66 [ECF No. 20-2 at 68].

evidentiary hearing.[42]  Taylor v. Missouri, No. 1022-CC11847, Conclusions of Law and Order ("motion court's judgment"), filed Feb. 3, 2012.[43]

Petitioner timely appealed the motion court's judgment to the Missouri Court of Appeals. In that appeal, Petitioner presented challenges to the motion court's denial of the three additional ineffective-assistance-of-trial-counsel claims that Petitioner had presented in his amended PCR motion.[44]  The Court of Appeals affirmed the motion court's judgment in a summary order accompanied by a more detailed supplemental memorandum.  Taylor v. State, No. ED98182, Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) (Mo. Ct. App. filed Jan. 29, 2013) (per curiam).[45]

After discussing the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668 (1984), the Missouri Court of Appeals rejected each of Petitioner's points on appeal.  Taylor v. State, No. ED98182, Supp. Mem. at 3-8.  In regard to Petitioner's first point, challenging his trial attorney's failure to ask the trial court to individually question jurors about whether a juror slept during V.W.'s testimony, the Court of Appeals concluded Petitioner had neither overcome the strong presumption that the challenged conduct was reasonable trial strategy nor sufficiently alleged prejudice resulting from his attorney's challenged conduct.  Id. at 3-5.  The court rejected Petitioner's second point, regarding closing argument, explaining that an attorney is not ineffective for failing to make a non-meritorious objection and the challenged argument neither

---

[42]  In addressing Petitioner's juror contact motion, the post-conviction motion court concluded "contact with members of the jury is not necessary" because Petitioner was not entitled to a hearing or relief on his ineffective assistance of counsel claim regarding a sleeping juror.  Mot. Ct.'s J., filed Feb. 3, 2012, Resp'ts Ex. I, at 2 [ECF No. 14].

[43]  Resp'ts Ex. I [ECF No. 14].  The motion court's judgment is also available in the PCR Legal File, Resp'ts Ex. N, at 145-52 [ECF No. 20-2 at 147-54].

[44]  See Pet'r Br., Resp'ts Ex. J, at 13-17, 18, 25, and 38 [ECF No. 14].

[45]  Resp'ts Ex. K [ECF No. 14].

constituted improper personalization nor introduced facts not in evidence.  Id. at 5-6.  The Court

of Appeals also denied Petitioner's third point concluding that Petitioner had not demonstrated

the vague references to the "building ban" "linked [Petitioner] to any prior arrest, charge, crime,

or conviction," or "played a decisive role in determining his guilt."  Id. at 6-7.   The Court of

Appeals issued its mandate on February 20, 2013.[46]

## II. Petitioner's Grounds for Federal Habeas Relief

In his timely federal habeas petition, Petitioner seeks relief on the following six grounds,

which, he asserts, demonstrate violations of his constitutional rights under the Fifth, Sixth, and

Fourteenth Amendments:

> 1.  The trial court erred in overruling Petitioner's motion for judgment of acquittal
> on the kidnapping charge because there was insufficient evidence;
>
> 2.   The trial court erred in overruling Petitioner's objections to the leading
> questions during V.W.'s direct examination, because the content of the leading
> questions provided the only evidence to support proof of the elements of forcible
> rape;
>
> 3.  The trial court erred in overruling Petitioner's objections to the State's *voir dire*
> questions asking whether the panel members would be able to consider guilt on
> testimony alone, despite the State's intention to introduce physical evidence;
>
> 4.  The trial attorney failed to ask the trial court to question the jurors individually
> to ascertain whether any of them slept during V.W.'s testimony;
>
> 5.  The trial attorney failed to object during closing argument to the prosecutor's
> personalization and introduction of facts not in evidence, as well as to move for a
> mistrial and request an instruction directing jurors to disregard the prosecutor's
> statements; and
>
> 6.  The trial attorney failed to object and request a mistrial in response to V.W.'s
> repeated testimony that Petitioner was banned from V.W.'s building.

---

[46]  Missouri Court of Appeals Mandate in Pet'r PCR Appeal, filed Feb. 20, 2013, Resp'ts Ex. L [ECF No.
14].

Respondents counter that Petitioner's grounds for habeas relief lack merit because the Missouri Court of Appeals' decision addressing these issues is neither incorrect nor an unreasonable application of clearly established federal law. In addition, Respondents argue that the Court of Appeals' decision is based on a reasonable determination of the facts in light of the evidence presented in the state court proceedings.

### III. Discussion of Grounds for Habeas Relief

A.  Standard of review under 28 U.S.C. § 2254 [47]

"In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless a state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established United States Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme]

---

[47] In his second through sixth grounds for relief, Petitioner argues that these claims constitute "structural error," citing Arizona v. Fulminante, 499 U.S. 279 (1991) and Sullivan v. Louisiana, 508 U.S. 275 (1993). In Fulminante, the Supreme Court described "structural error" as "structural defects in the constitution of the trial mechanism," such as "the total deprivation of the right to counsel at trial," the presence of a partial trial judge, the unlawful exclusion from a grand jury of persons based on their race, the violation of the right to self-representation, and a violation of the right to a public trial. Fulminante, 499 U.S. at 309-10. "Structural defects" affect "the framework within which the trial proceeds, rather than simply [being] error[s] in the trial process itself." Id. at 310. Applying Fulminante, the Supreme Court determined in Sullivan that an error in a jury instruction regarding the burden of proof constituted "structural error." Sullivan, 508 U.S. at 278-82. A federal habeas court need not address a "structural error" argument if the underlying state court decision did not unreasonably apply clearly established federal law. See White v. Wheeler, 136 S. Ct. 456, 462 (2015).

Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) ("Taylor"). If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Taylor, 529 U.S. at 407-08; see also id. at 413.

The "clearly established federal law" requirement of federal habeas review requires the federal habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision on the merits. Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011) (relying on Cullen v. Pinholster, 563 U.S. 170 (2011)). Moreover, Supreme Court holdings, rather than dicta, constitute "clearly established Federal law." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). State courts are not required to cite to United States Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). Importantly, in reviewing state court decisions to ascertain whether they either contradict or unreasonably apply clearly established federal law, a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181-82.

In a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a state court shall be presumed to be correct" unless rebutted by clear and convincing

evidence. 28 U.S.C. Section 2254(e)(1). The presumption of correctness applies to the factual determinations made by a state court at either the trial or appellate levels, <u>Smulls v. Roper</u>, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, <u>Grass v. Reitz</u>, 749 F.3d 738, 743 (8th Cir. 2014). Likewise, federal habeas courts defer to state court credibility determinations. <u>Smulls</u>, 535 F.3d at 864.

B. <u>Claims alleging trial court error</u>

1. Ground one – sufficiency of the evidence of kidnapping

Petitioner claims that the trial court violated his rights to due process and a fair trial because there is insufficient evidence to support the kidnapping conviction. Specifically, Petitioner argues there is no evidence that Petitioner's confinement of V.W. increased the risk of harm to her and, therefore, V.W.'s confinement was incidental to the assault and rape offenses.

Respondents counter that the confinement of V.W. "was not merely incidental to the rape and assault but also concealed [Petitioner]'s crimes and made [V.W.]'s escape more difficult." Respondents further contend that the Court of Appeals' decision finding sufficient evidence to support the kidnapping conviction is reasonable, entitled to deference, and neither contrary to nor an unreasonable application of clearly established federal law.

A federal habeas court "may not overturn a state court decision rejecting a sufficiency-of-the-evidence challenge simply because the federal court disagrees with the state court." <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 4 (2011) (per curiam). Rather, a federal habeas court may only overturn a state court decision on the grounds of insufficiency "if the state court decision was 'objectively unreasonable.'" <u>Id.</u> (quoting <u>Renico v. Lett</u>, 599 U.S. 766, 773 (2010)); <u>accord</u> <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam) (quoting <u>Cavazos</u>, 132 S. Ct. at 4).

To find sufficient evidence to support a criminal conviction, the Fourteenth Amendment's due process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979). The evidence is sufficient to support a "conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012) (emphasis in original) (quoting Jackson, 443 U.S. at 319). To resolve a federal habeas claim challenging the sufficiency of the evidence to support a state court conviction, a federal court looks to state law for the substantive elements of the offense, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman, 132 S. Ct. at 2064. Importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A federal habeas court may grant relief on a sufficiency-of-the-evidence claim if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality." Coleman, 132 S.Ct. at 2065.

Missouri law provides that:

[a] person commits the crime of kidnapping if he or she unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of . . .

(4) [f]acilitating the commission of any felony or flight thereafter, or

(5) [i]nflicting physical injury on or terrorizing the victim or another.

Mo. Rev. Stat. Section 565.110.1. "[T]he offense of kidnapping can only be sustained where the movement or confinement of the victim is more than 'merely incidental' to another offense."

State v. Sistrunk, 414 S.W.3d 592, 600 (Mo. Ct. App. 2013) (citing State v. Williams, 860 S.W.2d 364, 366 (Mo. Ct. App. 1993) ("Williams"). "Determining whether a defendant's . . . confinement of his victim is merely incidental to another offense or is sufficient to constitute the offense of kidnapping requires [a court] to focus upon whether 'there was any increased risk of harm or danger to the victim from the . . . confinement that was not present as the result of the other offense.'" Id. (quoting Williams, 860 S.W.2d at 366).

On direct appeal, the Missouri Court of Appeals analyzed the circumstances of the incident to determine whether "there was any increased risk of harm or danger to the victim from the . . . confinement that was not present as the result of" the assault and rape offenses. State v. Taylor, No. ED93334, Opinion at 4[48] (internal quotation marks omitted) (quoting Williams, 860 S.W.2d at 366). Such increased risk, the court stated, "may arise . . . from the potential of more serious criminal activity because of the remoteness or privacy of the area . . . ." Id. (internal quotation marks omitted) (quoting Williams, 860 S.W.2d at 366.) The court noted prior decisions concluding that the confinement element for kidnapping was satisfied by the confinement of an assault victim to an apartment, confinement of a rape and assault victim to a hotel room, and confinement of the victim of an attempted rape to a car. State v. Taylor, No. ED3334, Opinion at 3-5[49] (discussing and citing State v. Brock, 113 S.W.3d 227, 229, 231 (Mo. Ct. App. 2003); State v. Shelton, 78 S.W.3d 200, 204 (Mo. Ct. App. 2002); and Williams, 860 S.W.2d at 366, respectively). In each circumstance, the confinements increased the difficulty of the victim's escape and reduced the likelihood of detection. Id.

---

[48] Resp'ts Ex. B.

[49] Resp'ts Ex. B.

In denying Petitioner's first point on direct appeal, the Missouri Court of Appeals concluded:

> [T]he facts of this case are such that [Petitioner]'s confining V.W. to her apartment increased the risk of harm to her. [Petitioner] confined V.W. in her apartment against her will, and beat, strangled, and raped her for approximately two hours. V.W. testified that [Petitioner] would not allow her to use the bathroom. Moreover, V.W.'s apartment building had been recently ordered to close, and V.W. was one of the few people still living there. According to V.W.'s testimony, she was "literally the last person in that building on the eighth floor." The isolated circumstances in which [Petitioner] held V.W., therefore, increased the risk of harm to her and allowed [Petitioner]'s criminal behavior to go unnoticed.
>
> [Petitioner]'s confining V.W. to her apartment likewise made her escape more difficult. V.W. testified that she ultimately escaped by crawling down the fire stairs and taking the fourth floor elevator to the lobby; V.W. feared that [Petitioner] might hear the elevator ding if she called it to her floor. [Petitioner]'s confining V.W. in her apartment increased the risk of harm or danger to her, and therefore there was sufficient evidence to support the jury's finding [Petitioner] guilty of kidnapping.

State v. Taylor, No. ED3334, Opinion, Resp'ts Ex. B, at 5.

Petitioner argues that the Missouri Court of Appeals' conclusion that Petitioner's confinement of V.W. increased the risk of harm to V.W. conflicts with "clearly established federal law" set forth in Williams v. Armontrout, 912 F.2d 924, 927-30 (8th Cir. 1990) (en banc) ("Armontrout") (construing Missouri kidnapping law). However, circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" for purposes of review and relief under the AEDPA. See, e.g., Glebe v. Frost, 135 S. Ct. 429, 431 (2014) (per curiam) (citing Lopez v. Smith, 135 S. Ct. 1, 4-5 (2014) (per curiam)). Therefore, this Court

declines to consider Armontrout as a basis for federal habeas relief as to the sufficiency of the evidence to support the kidnapping conviction.[50]

Petitioner also cites Fiore v. White, 531 U.S. 225 (2001) (per curiam), in support of his position that his kidnapping conviction violates due process because the prosecution failed to present sufficient evidence of an element of the crime.  In Fiore, the United States Supreme Court concluded that a conviction under Pennsylvania law for operating a hazardous waste facility without a permit violated due process when the petitioner possessed the required permit, although the petitioner may have violated the permit's terms.  Id. at 226-29.  Petitioner urges his conviction is similarly inconsistent with the demands of due process.  The circumstances in Fiore, however, are distinguishable.  Petitioner's kidnapping conviction is supported by sufficient evidence to establish each element of the offense, including the requirement that the confinement of V.W. increase the risk of harm to her.  Because there is sufficient evidence to support each element of Petitioner's kidnapping offense, the Fiore decision, concluding that due process is violated when there is no evidence establishing an element of the offense, does not support the granting of federal habeas relief.

The Missouri Court of Appeals' decision finding sufficient evidence to support Petitioner's kidnapping conviction based on the increased harm to V.W. resulting from her

_____

[50]  In any event, Armontrout does not support Petitioner's argument that the kidnapping of V.W. was incidental to the rape and first-degree assault offenses.  In Armontrout, the petitioner challenged his capital murder conviction on the ground that the trial court erred in refusing to instruct the jury on first-degree, felony murder. Armontrout, 912 F.2d at 928.  There, the petitioner and his accomplice "brutally beat" the victim then transported him in the trunk of a car "to a location where they could sink [the victim's] body in the river after they killed him." Id. at 927.  In his federal habeas action, the petitioner argued that he was entitled to a lesser included offense instruction because the victim's death occurred during a kidnapping.  Id.  The Eighth Circuit held that the trial court did not err in refusing to give the kidnapping-based felony murder instruction requested by the petitioner because "the abduction and movement in the trunk of the car did nothing to intensify the risk [the murder victim] faced from the beginning."  Id. at 929.  By contrast, here, the evidence in Petitioner's case clearly supports the conclusion that Petitioner's confinement of V.W. to her isolated apartment increased the risk of harm to V.W. and was not incidental to the rape and first-degree assault.

confinement by Petitioner was not objectively unreasonable. Nor was the Court of Appeals' decision upholding Petitioner's kidnapping conviction either contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented.

2. Ground two – prosecutor's leading questions during direct examination of V.W.

Petitioner contends the trial court violated his right to due process and a fair trial by overruling Petitioner's objections to the prosecutor's leading questions during direct examination of V.W., resulting in the development of information establishing the elements for the forcible rape offense that "would otherwise have been unproven." Respondents counter that the Missouri Court of Appeals' decision denying Petitioner's challenge to the prosecutor's leading questions in his direct appeal was reasonable and entitled to deference.

During direct examination, the prosecutor asked V.W., "[V.W.] you told us about him putting his penis in your vagina."[51] Petitioner's attorney objected to the question as leading.[52] The trial court overruled the objection.[53] V.W. stated, "[Petitioner] did all different thing[s] you can think of sexual. The intercourse, the sodomies, and I think he even tried to have anal sex."[54] Later, the prosecutor said,

> I want to go back and cover something that I realized in listening to you that I may have missed. You talked about way back in the beginning when you first took the stand, you were telling us about how [Petitioner] was trying to have sex with you. Did that happen?[55]

---

[51] Trial Tr. at 279 [ECF No. 21-2 at 73].

[52] Trial Tr. at 279 [ECF No. 21-2 at 73].

[53] Trial Tr. at 279 [ECF No. 21-2 at 73].

[54] Trial Tr. at 279 [ECF No. 21-2 at 73].

[55] Trial Tr. at 295 [ECF No. 21-2 at 77].

(Footnote added.)  V.W. responded, "Yeah."[56]  Prosecutor asked her, "Okay.  So he was able to penetrate you?"[57]  V.W. answered, "Yes," and Petitioner's attorney objected on the grounds the question was a leading question.[58]  V.W. answered "Yes" again and the trial court overruled Petitioner's objection to the question.[59]

The Missouri Court of Appeals denied Petitioner's challenge on direct appeal to the leading questions.  The court concluded that, even if the challenged questions directed to V.W. were leading, Petitioner was not prejudiced by them because:

> Howard, the emergency room nurse who performed a sexual assault exam on V.W., testified that V.W. exhibited genital trauma.  V.W.'s genital trauma, according to Howard, included bleeding and abrasions inside her vagina as well as on her cervix.  Howard further testified that V.W. experienced pain when Howard inserted the speculum in her vagina.  Howard's testimony provided sufficient evidence for the jury to find that [Petitioner] forcibly raped V.W.

State v. Taylor, No. ED93334, slip op at 6.

Neither Petitioner nor Respondents cite to United States Supreme Court decisions addressing alleged error when a prosecutor leads a victim during direct examination and purportedly establishes elements of the charged crime.  The Eighth Circuit has observed that "the repetitive use of leading questions in developing the crucial elements of an offense may be so gross that it deprives the accused of a fair trial subject to habeas corpus review."  Garza v. Wolff, 528 F.2d 208, 210 (8th Cir. 1975).  Even if the AEDPA permitted the court to rely on Eighth Circuit precedent as "clearly established federal law," the record in this case does not support the

---

[56]  Trial Tr. at 295 [ECF No. 21-2 at 77].

[57]  Trial Tr. at 295 [ECF No. 21-2 at 77].

[58]  Trial Tr. at 295 [ECF No. 21-2 at 77].

[59]  Trial Tr. at 295 [ECF No. 21-2 at 77].

conclusion that the prosecutor's use of leading questions was so "gross" as to deprive Petitioner of a fair trial.[60]

Accordingly, the decision of the Missouri Court of Appeals neither incorrectly nor unreasonably applies "clearly established Federal law."

> 3.    Ground Three – prosecutor's voir dire questions implying absence of physical evidence

Petitioner asserts the trial court violated his rights to due process and a fair trial by allowing the prosecutor to ask the panel members during *voir dire* if they would be able to consider Petitioner's guilt based on testimony alone, without physical evidence, when the State intended to present physical evidence, including DNA, photographs, and medical records. Respondents contend that the Missouri Court of Appeals' decision on direct appeal rejecting Petitioner's challenge to the prosecutor's *voir dire* questions was reasonable and is entitled to deference.

During *voir dire* the prosecutor described different types of evidence, specifically, physical evidence and testimonial evidence, that are "equal," and stated "[i]t's up to you as a jury to take each piece you're given" and assess its weight and credibility.[61] The prosecutor then asked if "[a]nyone . . . feel[s] that if they're not given physical evidence, no matter what that testimonial evidence is, they couldn't consider a guilty verdict?"[62] At the bench, Petitioner's

---

[60] In his reply, Petitioner acknowledges, "[i]n general a trial court has wide discretion in permitting leading questions and much depends upon [the] circumstances and the subject matter of the questions. Hesse v. Wagner, 475 S.W.2d 55, 62 (Mo. 1970); State v. Branom, 689 S.W.2d 778, 780 (Mo. [Ct.] App. . . . . 1985)." The two state cases cited by Petitioner address the issue of allowing leading questions during direct examination as a matter of trial court discretion and do not discuss the issue as a matter of federal constitutional law. See Hesse, 475 S.W.2d at 67 (a will contest case); Branom, 689 S.W.2d at 780 (a statutory rape prosecution).

[61] Trial Tr. at 80-81 [ECF No. 21-2 at 23-24].

[62] Trial Tr. at 81 [ECF No. 21-2 at 24].

attorney objected that "this question is misleading because there is physical evidence. There's DNA evidence, there[ are] photographs, [and] there[ are] items seized at the scene. . . . [The question is misleading because] it suggests that no physical evidence will be presented. Testimony alone. This is not a testimony alone case."[63] After learning from the prosecutor that she did "intend to present physical evidence," the trial court overruled the objection.[64]

In his direct appeal, Petitioner argued the State's *voir dire* questioning about the panel's ability to consider Petitioner's guilt on the basis of eyewitness testimony alone was misleading, confusing, and irrelevant, because the State intended to present physical evidence during trial. State v. Taylor, No. ED 93334, Resp'ts Ex. B, at 7, 8. The Missouri Court of Appeals disagreed, noting that such a claim is reviewed for abuse of discretion and Petitioner needed to establish "a 'real probability' that he was prejudiced" by the *voir dire* questioning. Id. at 7-8. More specifically, the court found the challenged questioning was not misleading because the State did not introduce physical evidence in support of the three charges on which the jury returned a not-guilty verdict. Id. at 8-9. The court also characterized the questioning as revealing the prosecutor's effort, within "[e]stablished principles," to ascertain that the panel members would "follow the court's instruction to determine whether [Petitioner] was guilty beyond a reasonable doubt, regardless of the form of evidence presented." Id. at 9.

A criminal defendant's right to an impartial jury arises from both the Sixth Amendment and principles of due process. Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976). "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored." Morgan v. Illinois, 504 U.S. 719, 729 (1992) (internal quotation marks

---

[63] Trial Tr. at 81 [ECF No. 21-2 at 24].

[64] Trial Tr. at 81-82 [ECF No. 21-2 at 24].

omitted) (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion)). While certain areas of questioning, such as possible racial bias and exposure to pretrial publicity, are required by the Constitution, "the trial court retains great latitude in deciding what questions should be asked on *voir dire*." Mu'Min v. Virginia, 500 U.S. 415, 424 (1991) (addressing pretrial publicity); accord Ramsey v. Bowersox, 149 F.3d 749, 756 (8th Cir. 1998) ("trial judges have broad discretion to decide how to conduct *voir dire*"). Importantly, a federal habeas court's authority to review the manner in which *voir dire* is conducted during a state criminal trial is "limited to enforcing the commands of the United States Constitution." Mu'Min, 500 U.S. at 422.

Petitioner cites Duncan v. Louisiana, 391 U.S. 145 (1968) to support his argument that "[t]he purpose of *voir dire* is to provide both parties with the opportunity to participate in the selection of a fair trial [sic] and impartial jury."[65] In that case, the United States Supreme Court held the right to a "trial by jury in criminal cases is fundamental to the American scheme of justice" and "the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which – were they to be tried in a federal court – would come within the Sixth Amendment's guarantee." Id. at 149. The Supreme Court concluded that the denial of the defendant's demand for a jury trial of his offense, which was punishable by two years in prison, violated the defendant's constitutional right to trial by jury. Id. at 161. The Supreme Court did not expressly

---

[65] Pet'r Reply at 13 [ECF No. 17 at 13]. Petitioner also cites State v. Johnson, 207 S.W.3d 24, 41 (Mo. 2006) (en banc), for the proposition that a "trial court has discretion over the nature and extent of counsel's questioning during *voir dire* [and an appellate court] will not disturb the trial court's decision unless there is a manifest abuse of discretion and a real probability of injury to the defendant." Pet'r Reply at 12 [ECF No. 17 at 12]. While the Missouri Supreme Court decision in Johnson cited to the United States Supreme Court's decision in Morgan, see Johnson, 207 S.W.3d at 40, the Missouri Supreme Court's decision relied on state case law to conclude that the trial court had not abused its discretion in sustaining the prosecutor's objections to defense counsel's *voir dire* questions regarding imposition of the death penalty. Id. at 40-41. Therefore, Johnson does not assist Petitioner.

address *voir dire* in the <u>Duncan</u> case. Therefore, <u>Duncan</u> does not support federal habeas relief due to a prosecutor's *voir dire* questions implying an absence of physical evidence.

The parties have not directed the Court to a United States Supreme Court decision addressing whether a defendant's rights to due process and a fair trial are violated by the manner in which a prosecutor questions members of a venire regarding the type of evidence that will be presented at trial. While the Eighth Circuit has addressed a petitioner's federal habeas claim challenging a prosecutor's *voir dire* questions posing hypotheticals about circumstantial evidence, <u>Hobbs v. Lockhart</u>, 791 F.2d 125, 129 (8th Cir. 1986), Eighth Circuit case law does not constitute "clearly established Federal law" for purposes of habeas review under the AEDPA. <u>See</u>, <u>e.g.</u>, <u>Glebe</u>, 135 S. Ct. at 431 (citing <u>Lopez</u>, 135 S. Ct. at 4-5). Accordingly, the Missouri Court of Appeals' decision rejecting on direct appeal Petitioner's challenge to certain *voir dire* questioning by the prosecutor was not either contrary to or an unreasonable application of clearly established federal law.

C.  <u>Claims that Petitioner's trial attorney provided ineffective assistance</u>

Petitioner asserts that his trial attorney provided ineffective assistance of counsel by:  (1) failing to ask the trial court to question the jurors about whether a juror slept during V.W.'s testimony (ground four); (2) failing to object and ask for an instruction that the jury disregard the prosecutor's personalization and introduction of facts not in evidence during closing argument, as well as seek a mistrial on this basis (ground five); and (3) failing to object and seek a mistrial when V.W. repeatedly testified that Petitioner was banned from her building (ground six). Respondents counter that the Missouri Court of Appeals reasonably determined the facts and properly applied the <u>Strickland</u> standard when it held that Petitioner failed to demonstrate that he received ineffective assistance of counsel.

23

1.     Standard of Review

To succeed on an ineffective-assistance-of-counsel claim, a federal habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687, 688.  More specifically, the first (or performance) prong of the Strickland test, requires a petitioner to demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-94).  A federal habeas court evaluates counsel's challenged conduct from counsel's perspective at the time the challenged conduct occurred.  Bell v. Cone, 535 U.S. 685, 698 (2002) (citing Strickland, 466 U.S. at 689).  In assessing a challenge to an attorney's performance, a federal habeas court must attempt to avoid the "distorting effects of hindsight." Id. (quoting Strickland, 466 U.S. at 689). "Although hindsight may make a decision appear unwise or unsound, when scrutinizing counsel's performance a court 'must be highly deferential.'"  Underdahl v. Carlson, 381 F.3d 740, 743 (8th Cir. 2004) (quoting Strickland, 466 U.S. at 689).

"[W]hen reviewing an ineffective-assistance-of-counsel claim, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Woods, 135 S. Ct. at 1375 (quoting Strickland, 466 U.S. at 689).  There is "a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy."  Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir. 2001) (citing Strickland, 466 U.S. at 691).  Counsel's strategic decisions include trial decisions other than the decision whether or not to plead guilty, waive a jury trial, testify on one's own behalf, and take an appeal.  United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999).

"The second prong requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  White v. Dingle, 757 F.3d 750, 753 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Armstrong v. Kemna, 450 F.3d 592, 595-96 (8th Cir. 2010) ("Kemna") (internal quotation and citation omitted); accord Carroll v. Schriro, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694).  The petitioner bears the burden of showing such a reasonable probability.  Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992).  In deciding whether there is prejudice as a result of an attorney's deficient performance, a federal habeas court considers the totality of the evidence.  Kemna, 590 F.3d at 596 (citing Kimmelman, 477 U.S. at 381).

A habeas court need not address the prejudice prong if the attorney's performance was not deficient.  See Parkus v. Bowersox, 157 F.3d 1136, 1140 (8th Cir. 1998).  Likewise, a habeas court need not address counsel's allegedly deficient performance if the petitioner has failed to show prejudice.  See Strickland, 466 U.S. at 697; Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005).

An attorney does not provide ineffective assistance of counsel by failing to pursue an action that lacks merit.  McReynolds v. Kemna, 208 F.3d 721, 724 (8th Cir. 2000) (discussing an attorney's failure to present a Confrontation Clause challenge to admitted testimony that was "unlikely to succeed"); accord Dodge v. Robinson, 625 F.3d 1014, 1019 (8th Cir. 2010) (finding counsel's failure to present a double-jeopardy objection to a sentence did not constitute ineffective assistance because the objection lacked merit); Thai v. Mapes, 412 F.3d 970, 979 (8th Cir. 2005) (attorney not ineffective for failing to make a "factually meritless" argument); Gray v.

<u>Bowersox</u>, 281 F.3d 749, 756 n.3 (8th Cir. 2002) (noting that "a claim of ineffective assistance is not viable" where the attorney's omitted objection to evidence and argument "would have been without merit").

Importantly, under the AEDPA, '[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is . . . difficult." <u>Harrington</u>, 562 U.S. at 105. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (internal citations omitted).

2.  Ground Four – sleeping juror[66]

Petitioner contends his rights to a fair trial, an impartial jury, due process, and the effective assistance of counsel were violated by his trial attorney's failure to ask the trial court to question each juror about whether any juror was sleeping during V.W.'s testimony. Respondents counter that the decisions of the post-conviction motion court and the Missouri Court of Appeals in Petitioner's post-conviction proceeding addressing this contention are neither contrary to nor unreasonable applications of <u>Strickland</u> and are entitled to deference.

When denying Petitioner's claim that his trial attorney "was ineffective for failing to request that the [trial c]ourt [question] the jury about a juror sleeping during V.W.'s testimony," the post-conviction motion court found:

_____

[66] As support for all of his ineffective assistance of counsel claims, Petitioner argues there can be "<u>no possible strategic reason for</u>" his attorney's alleged errors. Petitioner cites <u>Richey v. Mitchell</u>, 395 F.3d 660 (6th Cir. 2005), which was <u>vacated by</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74 (2005), and <u>United States v. Bass</u>, 310 F.3d 321, 327-30 (5th Cir. 2002) in support of this argument. These decisions are inapposite because they do not address an attorney's strategy. Petitioner also cites to the Supreme Court decisions in <u>Fulminante</u>, <u>supra</u>, and <u>Sullivan</u>, <u>supra</u>, to support his position that his ineffective assistance of counsel claims are subject to "structural error" analysis rather than "harmless-error" analysis. Pet'r Reply at 16 and 19 (ground four), 22 and 26 (ground five), and 29-30 (ground six) [ECF No. 17 at 16, 19, 22, 26, and 29-30]. As noted earlier, this court need not address Petitioner's "structural error" argument if the underlying state court decision did not unreasonably apply clearly established federal law. <u>White</u>, 136 S. Ct. at 462.

[Petitioner] states that[, in response to questioning,] the juror . . . could have explained whether the juror had been sleeping [during V.W.'s testimony]. [Petitioner] asserts he saw a male juror sleeping, but his attorney "brushed him off stating that it could be good that he is sleeping during V.W.'s testimony." [Petitioner] claims the juror missed critical evidence and states that if the juror had been replaced with an alternate who heard [V.W.'s] testimony he would have been acquitted on one or more counts.

The mere fact that a juror slept during trial does not entitle [Petitioner] to relief in the absence of prejudice.  Vann v. State, 26 S.W.3d 377, 381 (Mo. [Ct.] App. . . . 2000) . . . .  [Petitioner] claims the juror was sleeping during [V.W.]'s testimony and his attorney did not raise the issue because he thought it was helpful to the defense.  It is thus clear that counsel made a strategic decision not to raise the issue, and [Petitioner]'s claim that he likely would have been acquitted had the juror heard [V.W.]'s testimony against him, which was the primary evidence against him, amounts to unlikely speculation.

Taylor v. State, No. 1022-CC11847, Mot. Ct. J. at 3.[67]

Petitioner presented this claim in his post-conviction appeal.  Specifically, Petitioner argued in his first point that his trial attorney provided ineffective assistance by failing to ask the trial court to individually question each juror "about whether anyone was sleeping during V.W.'s testimony."[68]  Petitioner contended that "there is a reasonable probability that the sleeping juror would have been dismissed, a new juror would have served on the jury, and the fair and impartial jury would not have convicted [Petitioner]."[69]  In denying this point, after discussing the Strickland case, the Missouri Court of Appeals concluded Petitioner had not "overcome the strong presumption that counsel's decision was reasonable trial strategy" and Petitioner had not sufficiently pleaded prejudice.  Taylor v. State, No. ED98182, Supp. Mem. at 5-6.[70]

---

[67] PCR Legal File, Resp'ts Ex. N, at 146-47 [ECF No. 20-2 at 148-49].

[68] Pet'r Br., Resp'ts Ex. J, at 13.

[69] Pet'r Br., Resp'ts Ex. J, at 13.

[70] Resp'ts Ex. K.

With respect to Petitioner's "failure to overcome the strong presumption that counsel's decision was reasonable," the Court of Appeals stated:

> [Petitioner] alleges he informed his attorney during trial that one of the jurors slept during [V.W.]'s testimony. However, the attorney "brushed him off stating that it could be good that he is sleeping during V.W.'s testimony." When the sentencing court examined [Petitioner] regarding the effectiveness of defense counsel, he stated that his attorney did not raise the issue because he believed it was helpful to the defense because the juror may not find [V.W.] credible. As such, [Petitioner] has failed to overcome the strong presumption that defense counsel's conduct fell within the wide range of professionally reasonable trial strategy.

Id. at 4. As for Petitioner's failure to plead sufficient allegations of prejudice, the court found:

> [a] sleeping juror does not entitle [Petitioner] to relief in the absence of prejudice. [Petitioner]'s allegations are conclusory and speculative as he fails to articulate what evidence the sleeping juror missed. Even if the juror admitted to sleeping during the testimony and was replaced by an alternate juror, there was overwhelming evidence of [Petitioner]'s guilt.

Id. at 4-5 (citations omitted).

In support of his position that his attorney's failure to address Petitioner's report of a sleeping juror constituted ineffective assistance, Petitioner relies heavily on Tanner v. United States, 483 U.S. 107 (1987). In Tanner, the Supreme Court stated that a petitioner has a "Sixth Amendment interest[] in an unimpaired jury [that is] protected by several aspects of the trial process," including voir dire and observations "by the court, by counsel . . . by court personnel," and by jurors, who "may report inappropriate juror behavior to the court before they render a verdict." Id. at 127. The Tanner decision did not directly address the required response to an allegedly sleeping juror. The Supreme Court did, however, imply that "lack of sleep" was not an "extraneous influence" that might support a post-verdict evidentiary hearing. See, e.g., id. at 122, 126 (finding no substantial evidence of jury incompetence where evidence "suggested, at

worst, that several of the jurors fell asleep at times"). Accordingly, Tanner appears to undercut Petitioner's argument.

In addition to citing Tanner, Petitioner relies on United States v. Tierney, 947 F.2d 854 (8th Cir. 1991). In Tierney, the Eighth Circuit held that the trial court did not err by failing *sua sponte* to declare a mistrial due to a sleeping juror. Id. at 868-69. The Eighth Circuit cited Tanner for the proposition that the Supreme Court found "no substantial evidence of jury incompetence where evidence 'suggested, at worst, that several of the jurors fell asleep at times.'" Id. at 869 (citing Tanner, 483 U.S. at 125).

Petitioner also relies on State v. Fritz, 913 S.W.2d 941 (Mo. Ct. App. 1996) to support this ground. In Fritz, the Missouri Court of Appeals remanded a post-conviction proceeding to the motion court to conduct a hearing on the petitioner's contention that his attorney provided ineffective assistance by failing to object to two allegedly sleeping jurors. Id. at 945; but see Vann, 26 S.W.3d at 381 (no hearing required based on allegations regarding an allegedly sleeping juror); accord Davis v. State, 453 S.W.3d 882, 885-86 (Mo. Ct. App. 2015) (no error in denying, without an evidentiary hearing, a post-conviction motion alleging the trial attorney was ineffective in failing to strike a sleeping juror). The Fritz case is distinguishable. In Fritz, the record did not disclose any reasoning by the attorney for his failure to object to the allegedly sleeping jurors. Fritz, 913 S.W.2d at 945. In contrast, the record here discloses the attorney's failure to pursue questioning of the jurors resulted from a decision based on reasonable trial strategy.

The Missouri Court of Appeals' decision affirming the denial of Petitioner's claim that his trial attorney provided ineffective assistance of counsel by failing to ask the trial court to question jurors about sleeping during V.W.'s testimony is neither contrary to nor an

unreasonable application of <u>Strickland</u>, <u>supra</u>. Additionally, the Court of Appeals' decision was not based on an unreasonable determination of the facts in light of the evidence presented.

      3.        Ground Five – prosecutor's closing argument

Petitioner contends his trial attorney provided ineffective assistance of counsel by failing to object, seek a jury instruction to disregard, and move for a mistrial in response to the prosecutor's alleged improper personalization and introduction of facts not in evidence during closing argument. Respondents counter that the Missouri Court of Appeals' decision on Petitioner's challenge to the prosecutor's closing argument was reasonable and is entitled to deference.

If a prosecutor's closing argument cannot be characterized as improper, then a prosecutor's comments will not support an ineffective assistance of counsel claim. <u>Epps v. Iowa</u>, 901 F.2d 1481, 1483 (8th Cir. 1990). Moreover, to obtain federal habeas relief based on a prosecutor's closing argument, a petitioner must show "a reasonable probability that the outcome would have been different but for the improper statement." <u>Barnett v. Roper</u>, 541 F.3d 804, 813 (8th Cir. 2008). In analyzing a federal habeas claim based on a prosecutor's closing argument, a federal habeas court considers "the weight of the evidence and whether the improper argument misstated evidence or implicated other specific [constitutional] rights of the" petitioner. <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1022 (8th Cir. 2006).

During her rebuttal closing argument, the prosecutor stated:

Why would Detective Herzberg risk his entire career and make up this statement of the [Petitioner] that isn't even a confession, that is just some crazy story. And then he gets up here and tells you a different story and that Herzberg made up that earlier story and risked his career on that.[71]

---

[71] Trial Tr. at 520 [ECF No. 21-2 at 133].

(footnote added).   Petitioner contended in his post-conviction motion that these statements prejudiced him by presenting facts not in evidence "to excuse why the State's case might be seen as weak because . . . V.W. could not remember many details and was not a good witness."[72] Additionally, Petitioner asserted the statements prejudiced him "because the State was trying to appeal to the jurors' passions and prejudices by arguing it was impossible for Detective Herzberg to make up a statement because he would never risk his career."[73]   Finding that the prosecutor's challenged statements did not suggest "personal danger to the jurors or their families if [Petitioner] were to be acquitted," the motion court denied this claim, concluding that the challenged argument by the prosecutor "was a valid argument regarding the credibility of a witness."[74]

The Missouri Court of Appeals rejected Petitioner's claim of ineffective assistance, concluding that the prosecutor's closing argument was "a valid argument regarding the credibility of a witness."   Taylor v. State, No. ED98182, Mem at 5-6.[75]   The Court of Appeals determined that the prosecutor did not suggest personal danger to either the jurors or their families if Petitioner was acquitted and did not "ask the jurors to place themselves in the shoes of the victim."   Id. at 5-6.   The Court of Appeals also concluded the prosecutor's challenged statements did not improperly "refer[] to facts outside the scope of the evidence," but instead were "a reasonable inference from the evidence adduced at trial."   Id. at 6 (citing State v. Chism, 252 S.W.3d 178, 187-89 (Mo. Ct. App. 2008)) (finding proper a prosecutor's suggestion that a

---

[72]   Pet'r Am. PCR Mot., Resp'ts Ex. H, at 14.

[73]   Pet'r Am. PCR Mot., Resp'ts Ex. H, at 14-15.

[74]   Mot. Ct. J., Resp'ts Ex. I, at page 3-4.

[75]   Resp'ts Ex. K.

police officer witness would not risk his career to lie). Stating that an attorney cannot provide ineffective assistance of counsel by failing to raise a non-meritorious objection, the Court of Appeals denied Petitioner's point. Id.

In this proceeding, Petitioner contends that he was prejudiced by his attorney's failure to object to the prosecutor's statements because those statements were "so egregious as to fundamentally infect the entire trial or [were] pervasive enough to render the result of the trial fundamentally unfair." As Petitioner argues, "[t]he relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

To support his claim, Petitioner likens his case to State v. Brown, 231 S.W.3d 268 (Mo. Ct. App. 2007). In Brown, the Missouri Court of Appeals reversed a conviction upon concluding the prosecutor's challenged closing argument "went beyond the permissible scope of comments about the credibility of a witness and were 'testimonial' comments by the prosecutor about her own credibility." Id. at 269-70. There, the prosecutor addressed a witness' testimony that the prosecutor suborned perjury, arguing, "[t]he idea that [a prosecutor] would risk a law license, a career, years of hard work, on one case is so offensive and completely ridiculous that we ask that you take [the witness]' testimony for what it is worth, which is nothing." Id. at 272. The court concluded that the prosecutor's argument that she "would never risk her career by suborning perjury . . . was improper," argued facts that were "uniquely within" the prosecutor's knowledge, and "went beyond a mere comment upon the plausibility of [the witness'] testimony." Id.

While Petitioner argues the "prosecutor's statements at Petitioner's trial were uncannily similar to the remarks made by the prosecutor in Brown," this court disagrees. Here, the

prosecutor's comments about a law enforcement witness' credibility do not raise an inference about the prosecutor's credibility or her possible knowledge of facts not introduced into evidence. Rather, the challenged comment focused solely on the credibility of a witness who testified at trial.

Petitioner also relies on Darden, 477 U.S. at 181, and Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Neither case supports Petitioner's position. In Darden, the Supreme Court concluded that, although the prosecutor's statement that "the death penalty would be the only guarantee against a future similar act" was inappropriate, it did not deprive the petitioner of his right to a fair trial. 477 U.S. at 180-81. In Pollard, the Eighth Circuit concluded that appellate counsel was not ineffective in failing to raise on appeal challenges to the prosecutor's statements that the petitioner was a "predator" and "[w]e've got to keep our doors locked . . . because of people like [the petitioner]." 28 F.3d at 890-91.

The decision of the Missouri Court of Appeals denying Petitioner's claim that his trial attorney provided ineffective assistance of counsel, due to a failure to challenge the prosecutor's closing argument regarding Detective Herzberg, was not contrary to or an unreasonable application of Strickland, supra. See Kinder v. Bowersox, 272 F.3d 532, 554 (8th Cir. 2001). Moreover, the court's decision is not based on an unreasonable determination of the facts.

4.      Ground Six – V.W.'s testimony regarding Petitioner's "building ban"

Petitioner contends that his trial attorney provided ineffective assistance by failing to either object or request a mistrial on the grounds that V.W.'s testimony that Petitioner was banned from V.W.'s building constituted evidence of uncharged crimes. Respondents counter that the Missouri courts considering this testimony reasonably concluded that a "building ban" is

not a crime and does not show a propensity to rape, assault, and kidnap. Respondents further assert that a non-meritorious objection does not constitute ineffective assistance of counsel.

In denying this claim in petitioner's state post-conviction motion, the motion court concluded that:

> because the testimony explained how [Petitioner] got into the building without being observed by police surveillance, there are many possible non-criminal explanations for a person being banned from a building, and the statement could not have had a decisive effect on the outcome of the trial in light of the strong evidence of [Petitioner]'s guilt which included not just the testimony of [V.W.] but also physical evidence.

Taylor v. Missouri, No. 1022-CC11847, Mot. Ct. J., at 4.[76] On post-conviction appeal, the Missouri Court of Appeals noted that prior bad act evidence "must show defendant committed, was accused of, was convicted of, or was definitely associated with other crimes or bad acts," and "the defendant bears the burden of showing the challenged evidence actually constitutes evidence of another crime." Taylor v. State, No. ED98182, Supp. Mem., at 6.[77] Consistent with these principles, the court concluded:

> [Petitioner] has failed to prove that the challenged evidence linked him to any prior arrest, charge, crime, or conviction. [V.W.]'s vague references that [Petitioner] was banned from the building did not show that [Petitioner] was associated with other crimes or bad acts which would lead the jury to conclude he was guilty of the charged crime. There are many possible non-criminal explanations for a person being banned from a specific building that would not infer a propensity to commit the crimes of forcible rape, kidnapping, and assault in the first degree.

> Further, [the court] cannot say that [V.W.]'s vague references that indicated [Petitioner] was banned from the building played a decisive role in determining his guilt. The jury heard [V.W.]'s testimony which was corroborated by physical evidence of the crime. We find there is no reasonable probability the outcome of the trial would have been any different had defense counsel objected

---

[76] Resp'ts Ex. I.

[77] Resp'ts Ex. K

to the statement or requested a mistrial.  <u>Zink</u>, 278 S.W.3d at 175.  . . . [T]he motion court's findings of fact and conclusions of law are not clearly erroneous.

<u>Taylor v. State</u>, No. ED98182, Supp. Mem. at 7.[78]

To support his position that he was prejudiced by his attorney's failure to object to V.W.'s testimony Petitioner relies on <u>Darden</u>, 477 U.S. at 181, and <u>Pollard</u>, 28 F.3d at 890. While these cases do not address allegedly improper testimony by a witness, they stand for the well-established proposition that the Due Process Clause is violated if argument during trial is so prejudicial that it renders the trial fundamentally unfair.  This is similar to the standard applicable when the admission of evidence at trial is challenged on due process grounds.  <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991) (citing <u>Darden</u>, 477 U.S. at 179-83) (discussing whether victim impact evidence should be admissible during penalty phase of a capital trial).  In <u>Payne</u>, the Supreme Court concluded the Due Process Clause of the Fourteenth Amendment "provides a mechanism for relief" when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair."  <u>Id.</u>  In assessing fundamental fairness, the federal habeas court reviews "the totality of the facts in the case and the fairness of the whole trial."  <u>McDaniel v. Lockhart</u>, 961 F.2d 1358, 1360 (8th Cir. 1992).

Petitioner has not demonstrated that the verdict would differ in the absence of V.W.'s challenged testimony or that the testimony so unduly prejudiced him that it rendered the trial fundamentally unfair.  Accordingly, the admission of V.W.'s generalized references to Petitioner's ban did not violate due process, and the trial attorney's failure to object did not constitute the ineffective assistance of counsel.  Petitioner provides no basis for a finding that the Missouri Court of Appeals' application of the <u>Strickland</u> standard was contrary to, or involved an

---

[78]  Resp'ts Ex. K.

unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court. Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010).

## IV. Petitioner's Request for an Evidentiary Hearing

As a general rule, an evidentiary hearing is within a court's discretion, as limited by statutory restrictions set forth in the AEDPA. See Schriro v. Landrigan, 550 U.S. 465, 473-75 (2007). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Id. at 474. In addition, a federal habeas court must take into account "the deferential standards" under the AEDPA that "control whether to grant habeas relief." Id. "An evidentiary hearing is not required if the record refutes the factual allegations, otherwise precludes habeas relief," or allows resolution of the issues by reference to the state court record. Id.

Having considered the AEDPA's requirement that a federal habeas court limit its review to the record that was before the state court that adjudicated the claims on the merits, Cullen, 563 U.S. at 181-82, the Court will deny Petitioner's request for an evidentiary hearing as the record supports the Missouri Court of Appeals' decisions on the merits of Petitioner's claims.

## V. Certificate of Appealability

To grant a certificate of appealability, the court must find a substantial showing of the denial of a federal constitutional right. See Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir.

1994)).  Because Petitioner has not made such a showing, the court will not issue a certificate of appealability.

## VI.  Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Jay Cassady is **SUBSTITUTED** for the originally named Respondent.

**IT IS FURTHER ORDERED** that Chris Koster is **ADDED** as a Respondent.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the court will not issue a certificate of appealability.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of September, 2016.